UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

MARINE TRAVELIFT INC.,

    Plaintiff,

v.    Case No. 14-C-443

ASCOM SpA,

    Defendant.

**ORDER**

In this patent action, the parties have filed a spate of motions and accompanying briefs, totaling hundreds of pages. Plaintiff MTI takes umbrage at what it views as ASCOM's "moving target" defense, whereby ASCOM raises new arguments in its lengthy reply brief and offers testimony of individuals not disclosed as experts as well as new testimony by experts previously disclosed. MTI has moved to strike the reply brief on these grounds, and has also moved to exclude the opinions offered by ASCOM's experts. These motions must be addressed before the court can decide the pending summary judgment motions.

**I. Motion to Strike Testimony of Bruce Farber**

Plaintiff first argues that the Defendant's expert, Bruce Farber, is unqualified to give opinions on many of the conclusions he has reached. I begin by observing that motions to strike are disfavored, because often their purpose proves dilatory, and other times the motions are merely an effort to make additional arguments outside of the page limits governing merits briefs. *Custom Vehicles, Inc. v. Forest River, Inc.,* 464 F.3d 725, 726-27 (7th Cir. 2006).

Turning to Plaintiff's arguments, Plaintiff cites several statements in which Farber critiques

aspects of the patents in suit from a *legal* perspective, for example, by opining that it is unusual for a patent to address prior art in the detailed description, or that the specification is deficient for failing to disclose the novelty or value of the invention. Farber, a mechanical engineer, is simply unqualified to offer these kinds of observations about the patents. I agree, and will therefore disregard such conclusions in reaching a decision. However, it seems likely that the Defendant was not offering such opinions for anything other than a general background observation about the patents. These kinds of *ad hoc* statements are commonly found, particularly in lengthy declarations or depositions, and may be disregarded without becoming the subject of a motion to strike.

MTI also argues that Farber may not opine on obviousness because he failed to consider its evidence of the so-called secondary factors that could establish non-obviousness even if the claim appeared otherwise to be obvious. These considerations include things like meeting an unmet need, unexpected success in the marketplace, and the failure of others. *Wyers v. Master Lock Co.,* 616 F.3d 1231, 1237 (Fed. Cir. 2010). Because any obviousness analysis must include consideration of these factors, MTI argues that Farber's opinion must be struck.

ASCOM is correct, however, that MTI's beef seems to be with the merit of the conclusions Farber reached, not the methodology he used. If there are holes in Farber's analysis, then MTI may point them out and they will factor into the weight a court or jury ultimately gives it. But MTI has not cited a single case in which an expert's testimony was stricken merely because he did not discuss secondary factors. It cites one case in which the Federal Circuit found an expert's testimony unsupportive of his obviousness conclusion, but that was a question of the weight of the evidence, not its admissibility. *InTouch Techs., Inc. v. VGO Commc'ns, Inc.,* 751 F.3d 1327, 1348 (Fed. Cir. 2014). As noted at the outset, motions to strike are usually not an appropriate vehicle for debating

2

the conclusions reached by an expert. The obviousness inquiry, ultimately, is a question of law informed by factual conclusions. Farber is not being offered as an expert on things like the marketplace for gantry cranes, he is offered as a mechanical engineering expert. The court may consider those opinions and give them the appropriate weight, informed by the other arguments ASCOM undoubtedly will make regarding the secondary factors. "Striking" the testimony would be wholly unwarranted.

The same holds true for MTI's other objections, which are based on the fact that Farber, in a few spots, appears to imagine or speculate as to why the patent examiner did certain things. MTI also spends a full page in its briefs objecting to Farber's isolated remark that at some point he happened to become acquainted with one of the inventors of the Skaalen patent. *Daubert* and other rules of exclusion, which are designed to prevent a jury from being inundated by unscientific testimony or irrelevant evidence, need not be adhered to with rigidity at the summary judgment stage. Judges are skilled in weighing expert evidence, and they have neither the need nor the time to pore over countless pages of testimony and affidavits, scratching out a phrase here or a paragraph there, like so many copy editors. *Rodriguez v. Gerardot,* 2014 WL 1794560, at *6 (N.D. Ind. May 5, 2014) (the motion "essentially asks me to go line-by-line through Rodriguez's affidavit and strike the sentences that aren't adequately supported. If motions to strike, generally, are disfavored, motions to strike sentences or paragraphs are especially disfavored."); *Custom Vehicles,* 464 F.3d at 727 ("The way to point out errors in an appellee's brief is to file a reply brief, not to ask a judge to serve as editor. . . . The judiciary has quite enough to do deciding cases on their merits.") If an expert's opinion is unsupported, or if it is irrelevant, the solution is to ignore that opinion rather than to strike it. "There is less need for the gatekeeper to keep the gate when the gatekeeper is keeping

3

the gate only for himself." *United States v. Brown,* 415 F.3d 1257, 1269 (11th Cir. 2005). Evidence, particularly testimony, is often messy: depositions and declarations are often strewn with asides, speculations, and the like. What's important are the core conclusions and the underlying evidence, and judges can usually sift through the rest of it without editing the evidence in advance. Presumably most judges (and jurors) would understand that a mechanical engineer does not possess mind-reading abilities. And so if the expert says he thinks the examiner "failed to consider" X, or "overlooked" Y, we understand that the expert is not testifying that he actually has divined the examiner's thought process. Instead, such phrases suggest merely that the expert disagrees with it or finds it inadequate. Accordingly, the motion to strike will be denied.

**II. Motion for Sanctions**

**1. Farber's "New" Testimony**

MTI also seeks to strike Farber's latest report, which was submitted in response to the criticisms of MTI's expert. "An expert's rebuttal report should be stricken if it contains new opinions or information which contradicts the expert's initial report, but need not be stricken if it contains merely 'an elaboration of and [is] consistent with an opinion/issue previously addressed" in the expert's initial report.'" *Haskins v. First Am. Title Ins. Co.,* 2013 WL 5410531, at *2 (D.N.J. Sept. 26, 2013). The question, then, is whether the opinions expressed in Farber's declaration are "new" or whether they are tailored to the rebuttal of the Plaintiff's own expert's opinions.

By its terms, Farber's reply report is directed to responding to the Plaintiff's expert's criticisms of his conclusions. But MTI argues that several of his opinions are actually novel. First, he gives opinions about whether the Mi-Jack 850P (allegedly prior art) was in public use. The question of public use is a legal question informed by facts, and as such it is not readily susceptible

4

to expert testimony. Farber clearly is not an expert in how the Mi-Jack machine was used in 2002-2004, the relevant time period, and so the opinion will be disregarded without respect to whether it is "new" or not.

Second, MTI argues that Farber's conclusion that the 850P had "circle steering" when it was delivered in 2002 is a new opinion. Even if that is partially true, the opinion merely elaborates on his original opinion, and it was made in response to Dr. Kunz's opinion that the 850P did *not* have that feature until much later. *Kleen Products LLC v. Int'l Paper,* 306 F.R.D. 585, 592 (N.D. Ill. 2015) ("Importantly, Dr. Dwyer does not abandon his prior methods or conclusions. Rather, he conducted the additional analyses to refute Defendants' arguments and to show that his original conclusions and opinions are sound and a reliable method of assessing antitrust impact.")

Third, MTI asserts that Farber should not be allowed to opine that the 850P machine has a controller configured to reverse the drive direction of the wheels. Previously, MTI argues, Farber's opinion had been limited to reliance on the deposition of Joseph Cadile, one of the designers of the 850P, but now he supports his conclusion with the testimony of Myron Glickman, another of the crane's designers. Again, this kind of opinion is not something out of left field or that would be designed to sandbag an opposing party. It is simply an elaboration of his opinion, already expressed, that the 850P had the circle-steering capacity taught by the patents in suit.

Fourth, MTI challenges Farber's conclusion that using four motors (instead of two) would have been obvious and that the 850P anticipates claims of the patent that require a motor connected to each wheel. That was Farber's original opinion, but in his reply declaration he bolsters that opinion by citing several examples in the prior art. He also states that engineers at Mi-Jack (the company that made the 850P) would have known how to accomplish the patented technology using

5

four motors instead of two. It is true that Farber's reply is an effort to bolster his earlier opinion, but it is also clear that he did so in response to the Plaintiff's criticism that Farber's original opinion was wrong and based only on speculation. With that criticism, MTI opened the door for Farber to explain his own opinion more fully, and thus the "new" opinion is fair game.

Finally, MTI complains that Farber has disclosed a new opinion that it would have been obvious to implement gear drive mechanisms for turning the wheels of the 850P. His original opinion concluded that gear drives "are simply one of a finite number of components used to turn the wheels on a machine like a gantry crane. Their use is an obvious design choice . . ." (ECF No. 155 at ¶ 11.13.) His opinion was based on the Skaalen and Minty patents. Now, he also cites the Sturgill and Zakula patents as evidence of obviousness. Again, the opinion, to the extent it is "new" is merely an elaboration of his original opinion of obviousness, and it is based on patents that were already identified as prior art.

In sum, it is clear that reply expert declarations are allowed under the rules. It would not make sense to allow such opinions only to require that the opinions simply restate exactly what had already been stated. Obviously, there will always be something "new," or else there would be no point in filing a reply. Here, there are not brand new opinions or theories of invalidity but merely a few additional reasons supporting the original opinions, most of which were occasioned by the criticisms of the Plaintiff's expert. The motion for sanctions will therefore be denied.

**2. Declarations of Tiller and Zakula**

MTI also argues that the recent declarations by Tiller and Zakula constitute improper expert testimony because the testimony was not disclosed prior to the expert deadline. ASCOM responds that both Tiller and Zakula are fact witnesses because they both have personal knowledge of the Mi-

6

Case 1:14-cv-00443-WCG   Filed 12/15/15   Page 6 of 8   Document 226

Jack crane as it was used in 2002, when it was placed into service.

In some cases, such as this one, personal knowledge requires a certain kind of expertise, and unsurprisingly a fact witness' opinion will often possess some of the earmarks of expert testimony. That does not necessarily require the witness to be designated as an expert, however. For example, treating physicians often provide non-expert fact testimony, even though they must often call upon their medical expertise in testifying. Here, the few instances MTI cites do not appear to stray into the realm of pure expert testimony, but merely explain things about the Mi-Jack machine based on their own experience. Morever, as explained above, MTI is essentially asking the court to strike a couple of paragraphs out of declarations, and that is seldom a fruitful endeavor.

**III. Motion to Strike ASCOM's Reply Brief**

Finally, MTI asks the court to strike ASCOM's summary judgment reply brief. MTI argues that the brief, which runs to an unusually long 95 pages, contains myriad new arguments and relies on evidence not part of the original summary judgment record. In response, ASCOM notes that MTI itself "buried" the court with its own submissions, which included a 96-page brief in opposition and totaled more than 500 pages of briefs, expert reports and proposed findings. Under such circumstances, MTI should not be surprised that ASCOM required such a lengthy reply and cited additional evidence to respond to its arguments.

Without conducting a line-by-line analysis of all of the countless arguments thus far made, it appears the reply brief, like Farber's reply opinions discussed above, essentially bolsters arguments already made or responds to specific criticisms MTI raised in its own extensive response. The motion to strike will therefore be denied. Although there has already been an incredible amount of paperwork filed, in the interest of fairness I will allow MTI to file a sur-reply brief of no longer

7

than thirty pages. In it, it may identify and respond to any "new" arguments ASCOM has made.

**III. Conclusion**

For the reasons given above, MTI's motions to strike, [172, 197] and motion for sanctions [200] are **DENIED**. MTI may file a sur-reply brief, as set forth above, on or before January 15, 2015.

**SO ORDERED** this 15th day of December, 2015.

/s William C. Griesbach
William C. Griesbach, Chief Judge
United States District Court