UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

MARINE TRAVELIFT, INC.,

        Plaintiff,

v.                                                                        Case No. 14-C-443

ASCOM SpA, and INTERNATIONAL
BOATLIFT EXCHANGE, INC.

        Defendants.

**DECISION ON MOTIONS FOR RECONSIDERATION**

Following this court's decision on summary judgment, both sides filed motions seeking reconsideration and / or clarification of certain aspects of the court's decision. I address the parties' arguments below.

**I. MTI's Motion for Reconsideration / Clarification**

    **A. Stopping Angular Movement versus Drive Movement**

MTI's patent discloses a safety feature whereby movement of the crane's wheels is stopped if the controller senses a wheel is out of position. (ECF No. 98-4 at 2:15-21.) MTI first argues that this court erred by failing to recognize that, although the accused machines do not stop angular movement (that is, rotation around a vertical axis), they nevertheless *do* stop drive movement when the machine senses a wheel is out of position. (Drive movement is what moves the wheels forward and backward, while angular movement is what turns the wheel to change direction.) Because ASCOM's cranes do stop drive movement of the wheels, they should be found to infringe.

As the Defendants note, however, this issue was presented and even discussed in the

1

summary judgment opinion itself. (ECF No. 255 at 32-33.) In that opinion, I concluded that for something to be "stopped," it must be fully at rest. Because ASCOM's cranes did not stop the *angular* movement of the wheels, I concluded that their cranes' wheels were not "stopped" in the sense used in the claim terms, and thus did not infringe. MTI argues this was error.

The central problem for MTI is that its claim language is not broad enough to encompass both angular and drive movement. Instead, it is clear the claim provides protection only for a device that stops *angular* movement of the wheels when they are out of their intended position—a function that ASCOM's cranes do not perform. The specification supports this narrower reading, and so does the claim language itself. First, Claim 15 describes a "steering system." A "steering system," of course, is synonymous with a system for turning the wheels in an *angular* fashion because that is what "steering" is. Because a steering system would only involve the turning of the wheels in an angular fashion (i.e., steering or turning the crane), we would not expect the claim to disclose anything about the drive movement of the wheels in a forward or reverse manner. Thus, when the claim describes monitoring the "position" of the wheels, we must assume it means it is monitoring the *angular* position of the wheels. In other words, the controller is asking itself whether the wheels are properly turned to the right angle and, if not, the controller will stop the wheels from turning further. It does *not* say that it stops drive movement of the wheels when any wheel is out of position. This is most clearly set forth in the specification, which explains that "when one of the wheels exceeds a predetermined distance between its sensed position and programmed position (this can happen if a wheel is in a rut) the controller stops *angular* movement of the remaining wheels until the . . . wheel is at its programmed position." (ECF No. 98-4, 2:16-21) (italics added). Because ASCOM's cranes do not stop angular movement of the wheels, they do not infringe.

2

In addition, the specification further explains that the safety feature is concerned with wheel position in an angular, rather than drive, sense. If a wheel is out of position by a predetermined amount "(e.g., three degrees) for any wheel, the controller 110 stops *turning* the other wheels to their programmed position until the situation is corrected. . . . In this manner, the wheel that moved the least (i.e., the stuck wheel) will determine the desired position of the other steering wheels." (ECF No. 98-4, 9:46-54) (italics added). By using a threshold of "three degrees" as an example, it is clear that the patentee was describing angular position (measured in degrees) of the wheels rather than the drive position. It is equally clear that the controller is programmed to stop *turning* the other wheels, rather than to stop the drive movement of the other wheels. Thus, the only thing that the patent discloses is stopping the turning, or angular, movement of the wheels.

> The claim language bears this out. What it discloses is a controller that monitors
>
> the position of the plurality of wheels, and to control movement of the plurality of wheels in response to a selected steering mode, wherein the controller is further configured such that when at least one wheel has a sensed position a predetermined distance from a programmed position the controller stops movement of the remaining wheels.

(ECF No. 98-4, 13:8-16.)

The key question is what the claim means by "stops movement." Although the claim itself does not use the adjective "angular" to describe the movement being stopped, it is clear that such was its intent. As noted above, the specification quite clearly explains that this means "stops angular movement." (ECF No. 98-4, 2:16-21). This is not an instance in which a party is asking to narrow a claim term by importing a limitation from the specification. Instead, the court is being asked to construe the somewhat vague term "movement" in accordance with how the term is used in the specification. *Metabolite Labs., Inc. v. Lab. Corp. of Am. Holdings,* 370 F.3d 1354, 1360 (Fed.Cir. 2004) ("In most cases, the best source for discerning the proper context of claim terms is

3

the patent specification wherein the patent applicant describes the invention."); *see also, e.g., Kinik Co. v. Int'l Trade Comm'n,* 362 F.3d 1359, 1365 (Fed.Cir. 2004) ("The words of patent claims have the meaning and scope with which they are used in the specification and the prosecution history.") The claim language itself independently supports this conclusion as well. First, as described above, the claim is disclosing a steering system, something that is inherently concerned with angular, rather than drive, movement. Second, it would not make sense to interpret the claim in the fashion MTI proposes. The claim states that it "stops movement *of the remaining wheels*." (*Id.*) Implicit in such a function is that the stuck wheel is allowed to keep moving forward. It would not make sense to stop *drive* movement of remaining wheels while allowing the fourth, misaligned, wheel to keep driving. Instead, the claim only makes sense if the movement being stopped is the *angular,* or turning, movement of the remaining wheels. As the specification explains, the purpose of stopping angular movement is that the "wheel that moved the least (i.e., the stuck wheel) will determine the desired position of the other steering wheels." (ECF No. 98-4, 9:46-54). In other words, if one wheel gets stuck at 18 degrees, the controller will halt the turning of the other wheels, so that the stuck wheel is the limiting factor.

In sum, when read in proper context, the term "stops movement" means that the invention stops angular movement of the wheels when one or more wheels is sensed to be out of position. ASCOM's cranes do not perform that function. The fact that ASCOM machines might stop *drive* movement if a wheel becomes misaligned does not mean they infringe MTI's patent. The motion for reconsideration will therefore be denied.

**B. Clarification of Infringement**

MTI also asks that the court enter an order specifically identifying certain claims that are infringed. Although this court made rulings relating to these claims in its summary judgment

4

decision, the court did not specifically set forth the claims that were infringed.

The Defendants oppose such a ruling, primarily because the court found most of the claims at issue to be invalid. As such, they believe it would not make sense to issue an order regarding the infringement of invalid patents. Although that argument has a certain common-sense appeal, it ignores the fact that judicial economy would be well-served in the event the determination of invalidity is reversed on appeal. "Acting in the interest of judicial economy, the trial court proceeded to decide, correctly, the infringement issue, while fully recognizing that infringement of an invalid patent can create no legal liability." *Connell v. Sears, Roebuck & Co.,* 722 F.2d 1542, 1550 (Fed. Cir. 1983). "When presented with patent validity and infringement issues, trial courts should, as Judge Boyle did here, decide both. First, the parties, witnesses and exhibits involved in both issues are before the court. If a judgment limited to one issue is reversed, it may become necessary to again call many of the same persons before the court for trial or argument on the other." *Stratoflex, Inc. v. Aeroquip Corp.,* 713 F.2d 1530, 1540–41 (Fed. Cir. 1983). Accordingly, there is nothing to prevent the court from entering an appropriate order acknowledging the findings that flow from the court's decisions, even if such ruling does not become a part of a final judgment. I therefore conclude that the accused products sold to the following customers infringe on the Plaintiff's patents: Island Cove Marina and Resort, General Motors LLC, River Forest Yachting Center, GE Transportation, Shelter Island Boatyard, Houston Pilots, and Fred Wahl Marine Construction. (ECF No. 258 at 18-20.) As set forth below, however, fact issues appear to remain with respect to the cranes sold to Diamond Services.

There remain a few other claims. Specifically, MTI argues that the Defendants infringe claims 21-36 of the '362 patent and 21-23 of the '274 patent with machines sold to customers Diamond Services, Island Cove Marina, and General Motors. ASCOM responds that factual issues

5

remain, which means an entry of summary judgment on infringement would be premature. For example, it states that machines sold to Diamond Services did not have carousel-turning mode of the "short-turn" variety, a key teaching of the patents in suit, and in fact the machines did not have carousel steering ability at all.

This is a variation on an argument the Defendants made at the summary judgment stage. I rejected this line of argument on the basis that even if the cranes *currently* lacked certain key functionality, it appeared that they possessed that functionality in the past, or at least that they had the capability for such functionality given their design, etc. In truth, it is difficult to track the various features the Diamond Services cranes had at various periods of time. I concluded at the summary judgment stage that the Plaintiff had established the possibility of showing that the ASCOM cranes infringed, either at the time of sale or at some other time. However, although I rejected ASCOM's argument that it did not infringe, I did not explicitly conclude it *did* infringe, either. Given the factual complexity of the infringement question, especially with respect to the two cranes sold to Diamond Services, I remain convinced that factual issues remain to be resolved, and accordingly I will deny the motion seeking clarification on that point. A jury will have to make the ultimate call. MTI's motion for clarification on that point is therefore denied.

ASCOM's other arguments are unavailing, however. For example, it reads the summary judgment opinion as leaving the door open to the question of whether its controllers control movement "in response to placing the apparatus in the carousel steering mode." (ECF No. 98-1, 11:20-21.) But the sentence it cites is taken out of context. Reading the opinion in its full context, it is clear that I rejected ASCOM's narrow reading of the phrase "in response to," finding that the distinction it made did not save the accused products from infringement. Because I rejected its construction of the claim term, I did not leave the door open for further factual development. From

the limited briefing on this topic, it appears that this means MTI is entitled to summary judgment of infringement as to the Island Cove and General Motors machines.

In sum, the motion for clarification is denied in part, as set forth above. It is granted to the extent the court finds the following:

1. The Defendants have infringed claims 1-3 of the '362 patent by making, using or selling a BHT 40 ES to Island Cove Marina and Resort; two CLS 45 ES cranes to General Motors LLC; a BHT 60 ES to River Forest Yachting Center; two SPE 50 ES cranes to GE Transportation; a BHT 70 ES and BHT 150 ES to Shelter Island Boatyard; a BHT 480 ES to Houston Pilots; and a BHT 480 ES to Fred Wahl Marine Construction.

2. The Defendants have infringed claims 7-8 and 12-17 of the '362 patent by making, using or selling a BHT 40 ES to Island Cove Marina and Resort; two CLS 45 ES cranes to General Motors LLC; a BHT 150 ES to Shelter Island Boatyard; a BHT 480 ES to Houston Pilots; and a BHT 480 ES to Fred Wahl Marine Construction.

3. The Defendants have infringed claims 21-36 of the '362 patent and claims 21-23 of the '274 patent by making, using or selling a BHT 40 ES to Island Cove Marina and Resort and two CLS 45 ES cranes to General Motors LLC.[1]

**II. Defendants' Motion for Clarification of Invalidity of Claims of the '299 Patent**

In this court's summary judgment decision, I concluded that the Mi-Jack 850P prior art crane anticipated all of the relevant asserted claims. However, I found that the record was spotty as to which claims were specifically impacted. (ECF No. 255 at 15-16.) The Defendants now wish to add clarity by identifying exactly the claims that are invalidated.

---

[1] Of course, to the extent any of these infringements involve invalid claims, no liability attaches.

In the summary judgment decision, I concluded that the Mi-Jack crane had a feature requiring it to be in a stopped position before carousel turning mode could be activated. (*Id.* at 11-12.) This finding invalidated certain claims of the '362 patent. The Defendants argue that it follows from that conclusion that the asserted claims of the '299 patent (claims 9, 10, 17, 18, 23 and 24) should be invalidated as well. Those claims, in one way or another, include a teaching that the controller is programmed to disable an engine drive prior to positioning the wheels in the selected steering mode and then enabling the drive once the wheels are properly positioned. (ECF No. 24-9 at 12:35-38.) In the Defendants' view, my conclusion that the Mi-Jack machine had to be in a stopped position before carousel mode could be activated applies to these claims as well. In essence, they argue that a feature disabling the engine drive prior to activating carousel steering is the same as a feature requiring that the crane must be in a stopped position. They note that, elsewhere in the summary judgment opinion, this court took a broad view of the term "disable," finding that it would apply to any means of stopping an engine drive. (ECF No. 255 at 39.)

However, as the Plaintiff points out, this is not how the question was argued at the summary judgment stage. Instead, the claims of the '299 patent were alleged to be invalid in light of the Skaalen patent, as well as obvious in light of the Mi-Jack crane. Now, the Defendants appear to be arguing that the Mi-Jack crane actually anticipates the asserted '299 claims in the same manner they anticipated the '362 claims. That is not an appropriate argument to be made in a motion seeking "clarification" of a previous order. Moreover, it is not at all clear that the requirement of being in a stopped position before entering carousel mode is synonymous with having a controller that is programmed to disable the engine drive. It is *possible* that such is the case, but such a conclusion could be reached only after an express and well-supported argument to that effect is made during summary judgment briefing. That did not occur here. Accordingly, the motion for clarification will

8

be denied.

**III. Sanctions**

Also currently pending is the Plaintiff's motion for sanctions, which is based on what it views as the Defendant's unacceptable discovery conduct. Specifically, it alleges that the Defendants improperly delayed disclosing the fact that they bid on a marine lift sale for the J. Goodison Co. in July 2015. Over the course of several years, ASCOM made a number of bids to Goodison for a new mobile boat hoist. It disclosed several of these bids during the normal course of discovery, but failed to disclose its final bid, from July 2015, until the very end of discovery, in February 2016. MTI argues that even though it ultimately won the contract with Goodison, it had to settle for a much lower profit due to ASCOM's infringement and the fact that MTI had to compete with ASCOM's aggressive prices. And, although it knew about most of ASCOM's previous bids, it did not know that ASCOM bid only $2,725,400 to produce a hoist that was much larger than MTI's—something MTI views as strong evidence of price erosion.

ASCOM describes the unproduced document as a one-off oversight, a single document in a massive case involving thousands of attorney hours, fifty depositions and multiple motions. In fact, the document was produced during the discovery period, and so there is not even a violation of any Federal Rules. Instead of sitting on it, ASCOM produced the document within days of learning from MTI that it had not been produced. Moreover, ASCOM does not believe MTI is prejudiced in any way by the disclosure.

I conclude that the motion for sanctions should be denied. Based on the record before me, it is scarcely possible to determine that the single bid was disclosed late in the discovery process due to some kind of deliberate litigation strategy. James Alfieri, ASCOM's sales agent, testified that he simply missed the document until a final review he made at the request of ASCOM's own

9

lawyers. It is unclear what possible strategy Mr. Alfieri might have had in mind by withholding a single document until late in the process. To the extent it is relevant, the document relates to the damages the Plaintiff allegedly suffered, and there is no indication that Alfieri understood its importance to that issue.

I also conclude that prejudice is not established here. The document was disclosed in February 2016, long before any trial (which is not yet scheduled). Although summary judgment filings were pending, those motions did not address the issue of damages. Accordingly, to the extent the bid is material to damages, the Plaintiff is not foreclosed from relying on it during its trial presentation. In addition, by the time a trial occurs, the Plaintiff will have had more than a year to digest the information. Any conceivable prejudice should have evaporated by then. The motion for sanctions will therefore be denied.

**IV. Motions to Seal Documents**

Both sides have filed motions to seal documents. They have filed redacted versions of briefs and ask the court to seal the unredacted versions of those briefs. In addition, they ask to seal certain exhibits that contain confidential business information, including information about bids. I have reviewed the documents in question and conclude that both sides have narrowly restricted their requests to confidential information that may be sealed. For example, they propose to redact only a few sentences within the entire 72-page expert report of Bruce Farber. (See ECF No. 251-5.) The motions will therefore be granted.

### V. Conclusion

The motion for sanctions [238] is **DENIED**. The motion for reconsideration and clarification [257] is **GRANTED** in part and **DENIED** in part. The motion for clarification [260] is **DENIED**. The motions to seal [242, 245, 251, 259] are **GRANTED**. The *un*redacted versions of the documents found at ECF Nos. 243, 246, and 261 will remain under seal. In addition, Exhibits 3-14 of ECF No. 244 will remain under seal. The original docket filings corresponding to the attachments filed at ECF No. 251 and 252 will also be sealed, with the unredacted versions being made available on the docket.

The clerk will set the matter on the calendar for a telephonic scheduling conference to set pretrial and trial dates.

**SO ORDERED** this 13th day of December, 2016.

/s William C. Griesbach
William C. Griesbach, Chief Judge
United States District Court